**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
WILLIE DAVIS,                              :
                                          :        Civ. No. 12-5748 (JLL)
                    Petitioner,           :
                                          :
        v.                                :        **OPINION**
                                          :
STATE OF NEW JERSEY, et al.,              :
                                          :
                    Respondents.          :
_____  :

**JOSE L. LINARES, U.S.D.J.**

## I.        INTRODUCTION

Petitioner is a state prisoner and is proceeding _pro se_ with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner pled guilty to two counts of first-degree murder and is currently serving consecutive thirty-year sentences on these convictions.  Petitioner raises four claims in his federal habeas petition; specifically:

1.  His motion to withdraw his guilty plea should have been granted.  The plea was not entered knowingly and voluntarily as petitioner claimed his innocence.  Counsel was ineffective for failing to inform petitioner of possible affirmative defenses.

2.  The trial court abused its discretion in sentencing petitioner to consecutive terms of imprisonment.  The trial court failed to consider mitigating factors including petitioner's mental illness and the fact that the crimes were closely related such that concurrent sentences should have been imposed.

3.  Ineffective assistance of counsel for:  (a) failing to advise petitioner about the possibility of any defense based on mental deficiencies; (b) failing to provide petitioner with

discovery; (c) failing to conduct any investigation; and (d) pressuring petitioner into waiving insanity and diminished capacity defenses during the plea proceedings.

4. Failure of the post-conviction relief court to conduct an evidentiary hearing on petitioner's ineffective assistance of counsel claims.

For the following reasons, the habeas petition will be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On the evening of December 8, 2002, defendant picked up his children from their maternal grandmother's home in Jersey City Heights and took them to his apartment in Bayonne, where he resided with M.M.  Following a telephone conversation with M.M., defendant became upset, contemplated death, and attempted to slit his throat with a box cutter.  After failing to commit suicide, defendant received a second telephone call from M.M., during which they argued about his belief that she was not helping to support their household and of his suspicion that she was cheating.  Immediately after this argument, defendant slit his children's throats with the box cutter.  He then cut each child several more times and laid their bodies on his bed.

M.M. later called defendant to tell him she was coming home and asked that he pay her taxi fare when she arrived.  After paying the fare, defendant and M.M. went upstairs, where defendant showed her the children's bodies, saying, "[l]ook what you made me do." M.M. claimed that defendant then threatened her with a bat and forced her to cut herself.  When defendant eventually fell asleep, she fled the apartment, found a police patrol car and told the officer what had happened.  Defendant was taken to Jersey City Medical Center where on December 9, 2002, he admitted to the police that he killed his children.

On April 15, 2003, defendant was charged under Accusation Nos. 513-03 and 514-03 with two counts of first-degree murder, contrary to N.J.S.A. 2C:11-3a(1).  On the same day, defendant pled guilty to both counts.  In exchange for his plea, the State agreed not to seek the death penalty, but would instead recommend a sentence of thirty years of imprisonment, without parole on each count, to be served consecutively.  Pursuant to Rule 3:9-2, the court established a factual basis for the plea, confirmed the

[1] The factual background is taken from the New Jersey Superior Court, Appellate Division opinion on petitioner's direct appeal dated October 15, 2008.  (*See* Dkt. No. 9-23.)

defendant understood his decision, and ensured that defendant had been neither threatened or coerced into entering his plea.  Once satisfied that defendant's plea was both knowing and voluntary, the court accepted the plea and set a sentencing date of August 14, 2003.

In the interim, on February 3, 2003, two months before the plea, social worker Jorge Abreu submitted a preliminary case review indicating that defendant committed the murders during "a sudden disorganized homicidal rage" brought about by a combination of humiliation, substance abuse, early childhood trauma, and a neuro-cognitive deficiency.  On April 13, 2003, two days before the plea hearing, defendant was interviewed by defense psychologist, Guillermo Parra, Ph.D.  Parra interviewed defendant again on May 13, 2003 and May 17, 2003.  On June 5, 2003, Parra submitted a report in which he opined that, while defendant was competent to stand trial, he suffered from a mental defect during the murders rendering him unaware that his actions were wrong.  Parra agreed with Abreu that defendant suffered a "[c]atathymic crisis," [FN 1] causing defendant to believe that the only logical way to save his family was by destroying it.  He further opined that defendant has an "incipient schizophrenic disorder" which may have facilitated the crisis.

[FN 1]  Parra defined "[c]atathymic crisis" as "an event during which an individual develops unbearable psychic tension and then develops the idea that the only way to get ride of the tension is through a violent act."

The sentencing date was adjourned for over one year due to questions about defendant's mental state.  The State was concerned that there existed a reasonable potential for a PCR motion without some "articulation on the record that . . . he was competent . . . to waive any affirmative defenses he may have . . . and he could accept the plea."  Nevertheless, on November 18, 2003, while represented by his plea counsel, defendant signed an addendum to the April 15, 2003 plea form, acknowledging his understanding of the defense of insanity; acknowledging that "based on evidence provided to [him] since the entry of [his] plea," he "could attempt to assert the defense of insanity or any other defense allowed to [him] by law"; and requesting the trial court "to sentence [him] for the crimes [he] pled guilty on April 15, 2003."

On May 5, 2004, the court ordered an independent competency evaluation to be prepared by Peter D. Paul, Ph.D.  On July 28, 2004, Paul submitted his evaluation report opining that defendant

was malingering and feigning mental impairments in an effort to "lessen his degree of criminal responsibility." Paul concurred with Parra that defendant was fully competent to either stand trial or to waive his rights.

On October 15, 2004, defense counsel notified the court that defendant required new counsel because of issues pertaining to defendant's desire to withdraw his guilty plea. On December 7, 2004, represented by new counsel, defendant filed a motion seeking to withdraw his guilty plea, claiming innocence and arguing that he was unaware of his possible affirmative defenses at the time of the plea and may have lacked the mental capacity required to waive his rights. Because the trial judge who accepted defendant's guilty plea had retired from the bench, the motion was argued before another judge on January 25, 2005.

On February 9, 2005, the trial court entered an order supported by a written opinion denying defendant's motion to vacate his guilty plea. As to the question of defendant's innocence, the court found that defendant's assertion was nothing more than a change of mind "clearly right on point with Paul's independent finding that he is feigning mental illness to avoid his plea." Concerning defendant's competency, the court noted that defendant's own expert found him competent, only raising mental illness as it pertained to a possible insanity defense, which the court found defendant had waived when he signed the addendum and requested sentencing pursuant to his plea. The court concluded that defendant did not present sufficient evidence required to justify withdrawal of his plea because "[n]othing has objectively changed other than defendant changing his mind." On March 3,2005, defendant was sentenced pursuant to his plea agreement to two consecutive thirty-year terms of imprisonment without parole.

(Dkt. No. 9-23 at p. 2-6.)

Petitioner appealed to the New Jersey Superior Court, Appellate Division. On direct appeal, petitioner argued that the trial court should have granted the motion to vacate the plea because he did not knowingly and voluntarily enter his plea and he claimed his innocence. Additionally, petitioner argued that given the circumstances surrounding the commission of the offenses, and in light of the mitigating factors, the court abused its discretion in sentencing petitioner to two consecutive thirty-year sentences. On October 15, 2008, the Appellate Division

affirmed the conviction and sentence without prejudice "to defendant filing a [post-conviction relief] petition in the trial court asserting his claim of ineffective assistance of plea counsel." (Dkt. No. 9-23 at p. 23.)  The New Jersey Supreme Court denied certification on June 19, 2009. (*See* Dkt. No. 9-29.)

Thereafter, petitioner filed a post-conviction relief petition in the New Jersey Superior Court, Hudson County.  Petitioner contended that plea counsel was ineffective and that he had established the right to an evidentiary hearing on his ineffective assistance of counsel claims.  On August 25, 2010, the Superior Court denied the post-conviction relief petition.  (*See* Dkt. No. 9-34.)

Petitioner appealed to the Appellate Division, which affirmed on February 3, 2012.  (*See* Dkt. No. 9-43.)  The New Jersey Supreme Court denied certification on June 28, 2012.  (*See* Dkt. No. 9-46.)

Petitioner then initiated this federal proceeding by filing a habeas petition in September of 2012.  Petitioner filed an amended habeas petition in November 2012.  Respondents subsequently filed an answer and the matter is now ready for adjudication.

### III.   HABEAS CORPUS LEGAL STANDARD

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States.  *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254).  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any

claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision."  *Id.* (citations omitted).  A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *See Williams v. Taylor*, 529 U.S. 362, 409 (2000).  Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, - U.S. -, 131 S. Ct. 1388, 1398 (2011).  The petitioner carries the burden of proof and with respect to review under § 2254(d)(1), and the review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision.  *See Bond v. Beard*, 539

F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Additionally, AEDPA deference is not excused when state courts issue summary rulings on claims as "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, - U.S. -, 131 S. Ct. 770, 784-85 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

## IV.    DISCUSSION

### A. Claim I – Failure to Vacate Guilty Plea – Innocence, Unknowing and Not Voluntary

Within Claim I, petitioner argues that the trial court erred in failing to vacate his guilty plea because he did not enter his plea knowing and voluntarily and had maintained his innocence. Petitioner asserts that he has a history of mental illness and that defense counsel failed to inform defendant of any possible affirmative defenses.

As previously stated, habeas relief can only be granted for violations of the Constitution or laws or treaties of the United States. *See* 28 U.S.C. § 2254(a). The Supreme Court has stated that, "'[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). Thus, the inquiry for this Court is to determine whether the state court unreasonably applied clearly established federal law in determining whether the plea was knowing and voluntary. In this context and with respect to this claim, the Court must examine the state court's

analysis of whether plea counsel was ineffective by not purportedly informing petitioner of possible affirmative defenses.  "[W]hen a petitioner challenges the voluntariness and/or intelligence of his/her plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) applies." *McSwain v. Warren*, No. 11-5658, 2013 WL 496201, at *5 (D.N.J. Feb. 7, 2013) (citing *Hill*, 474 U.S. at 58; *Premo v. Moore*, - U.S. -, 131 S. Ct. 733, 737-38 (2011)).

In *Strickland*, 466 U.S. 668, the Supreme Court articulated the test for demonstrating an ineffective assistance of counsel claim.  First, the petitioner must show that considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.* at 688; *see also Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013).  Petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See Strickland*, 466 U.S. at 690.  The federal court must then determine whether in light of all of the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  *See id.*

Second, a petitioner must affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *See id.* at 694; *see also McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012).  "With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Rainey*

*v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697.)  Additionally, in assessing an ineffective assistance of counsel claim under AEDPA, the Supreme Court has noted that:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington,* 131 S. Ct. at 785 (internal quotation marks and citation omitted) (emphasis in original).

The *Strickland* standard also applies when a petitioner challenges the effectiveness of his counsel with respect to his guilty plea.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* (footnote omitted).

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in turn, will depend in large part on a prediction whether the evidence would have changed the outcome of a trial.  Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend

largely on whether the affirmative defense likely would have
succeeded at trial.

*Id.* at 59.

In this case, the last reasoned decision on this claim was from the Appellate Division

during petitioner's post-conviction relief proceedings which analyzed the claim as follows:

> To establish a prima facie case of ineffective assistance of counsel,
> defendant must demonstrate a reasonable likelihood of succeeding
> under the two-prong test established by *Strickland v. Washington*,
> 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  First,
> defendant must show that defense counsel's performance was
> indeed deficient.  *Id.* at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at
> 693.  Second, defendant must demonstrate that there exists a
> "reasonable probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have been different."  *Id.*
> at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.  The precepts of
> *Strickland* have been adopted by New Jersey.  *State v. Fritz*, 105
> N.J. 42, 58 (1987).

> Prejudice is not presumed.  *Id.* at 61.  Defendant must demonstrate
> "how specific errors of counsel undermined the reliability" of the
> proceeding.  *United States v. Cronic*, 466 U.S. 648, 659 n.26, 104
> S. Ct. 2039, 2047 n.26, 80 L. Ed. 2d 657, 668 n.26 (1984).

> The *Strickland/Fritz* test applies to ineffective assistance of
> counsel claims in the context of guilty pleas.  *State v. Difrisco*, 137
> N.J. 434, 456-57 (1994), *cert. denied*, 516 U.S. 1129, 116 S. Ct.
> 949, 133 L. Ed. 2d 873 (19960.  In that context, while the first
> prong of the *Strickland* test remains exactly the same, to meet the
> second prong, a defendant "must show that there is a reasonable
> probability that, but for counsel's errors, he would not have
> pleaded guilty and would have insisted on going to trial.  *Hill v.
> Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203,
> 210 (1985).

> An attorney is obligated to conduct a thorough investigation of the
> defendant's case, and must explore all possible defenses.  *State v.
> Martini*, 160 N.J. 248, 266 (1999).  A defendant cannot be said to
> have voluntarily pled guilty if his plea resulted from ineffective
> legal representation.  *State v. Rhein*, 117 N.J. Super. 112, 118
> (App. Div. 1971).

On appeal, defendant contends that his history of "significant mental illness," and the impact of that mental illness upon defendant's conduct on the day he murdered his children, was not thoroughly investigated by trial counsel before he "permitted [defendant] to plead guilty."  Defendant argues:

> While Dr. Guillermo Parra . . . interviewed the defendant on April 13, 2003, trial counsel nevertheless permitted [defendant] to plead guilty two days later.  As such, trial counsel did not have the benefit of any report which was subsequently issued by Dr. Parra, and further could not possibly have reviewed any subsequent findings regarding . . . defendant's mental infirmities with him in determining whether or not he should enter into a plea agreement. . . .
>
> Accordingly, trial counsel was clearly remiss by counseling his client to enter into a plea agreement without obtaining the report which would eventually be issued by Dr. Parra regarding [defendant's] mental infirmities and its potential relevant to [defendant's] criminal culpability.  [Trial counsel] was further remiss by, once having received the report, failing to review it with [defendant] so that [defendant] could make an informed decision between entering into a plea agreement or proceeding to trial based upon potential defenses which could either completely or partially exonerate him.
>
> [T]here was no indication whatsoever in [Dr. Parra's] report or at any other place in the trial record demonstrating [that] defendant had thoroughly reviewed any and all potential defenses with trial counsel.
>
> . . . .
>
> Accordingly, the defendant could very well have concluded, after being properly advised of all relevant evaluations rendered by the various experts, that he desired to proceed to trial rather than enter into a plea agreement.  Simply put, that decision was for the defendant himself to make, and he could only make such an informed decision if he

had the opportunity to thoroughly discuss with his attorney all such information.  Having not had the opportunity to do so, it cannot be said that his guilty plea was freely and voluntarily entered.

The record amply supports Judge Callahan's conclusion that two psychologists, Dr. Parra and Dr. Paul, both concluded that defendant was competent to waive the defense of insanity or diminished capacity.  As for defendant's contention that trial counsel never reviewed with him the possible defenses to the charges before he pled guilty, the record suggests that trial counsel's discussion of those defenses with defendant may not have been as thorough before defendant entered his guilty plea as it was in the interval between the plea and sentencing.  Notably, Dr. Parra's December 9, 2003 report makes reference to his earlier report of July 5, 2003, in which Dr. Parra opined that defendant was suffering from a "catathymic crisis" at the time he murdered his two children.  [FN 1]  Dr. Parra further opined in his July 2003 report that defendant had an "incipient schizophrenic disorder" that may have precipitated the catathymic crisis.  Because Dr. Parra's first report was not issued until July 5, 2003, it stands to reason that defense counsel could not have reviewed that report with defendant prior to the time defendant entered his guilty pleas on April 15 2003.

[FN 1]  Parra defined "catathymic crisis" as "an event during which an individual develops unbearable psychic tension and develops the idea that the only way to get rid of the tension is through a violent act."

We have no quarrel with defendant's contention that trial counsel was obliged to have discussed the insanity defense with him before he pled guilty.  We are satisfied, however, that any deficiencies that may have existed in trial counsel's discussion with defendant before defendant entered his guilty plea were fully rectified before sentencing.  Defendant expressly assured the judge in his November 18, 2003 addendum to the plea form:  that he understood the defense of insanity; that based on evidence presented to him subsequent to the entry of his guilty pleas he recognized that such a defense could be asserted; but that he was voluntarily giving up his right to assert the defense of insanity and was requesting that the trial court "sentence [him] for the crimes [he] pled guilty [to] on April 15, 2003."

By executing the November 18, 2003 addendum to the plea form, defendant expressed his understanding of the possible defenses and

his willingness to waive those defenses, and urged the court to proceed with sentencing. Although the discussion of those defenses should have occurred earlier, we are satisfied that counsel engaged in a meaningful discussion of the insanity defense with defendant before defendant was sentenced and convicted. Any deficiencies in trial counsel's performance prior to the plea were addressed and resolved before sentencing. In the end, defendant received the benefit of the thorough discussion that should precede the entry of a guilty plea. Although that discussion was belated, such delay had no ultimate impact on defendant's right to effective assistance of counsel, as those discussions were completed before sentence was ultimately imposed, thereby satisfying the requirement that a conviction that results from a plea be the result of an informed decision by a defendant. *See Rhein, supra*, 117 N.J. Super. 118. Moreover, because defendant did not establish a prima facie case of ineffective assistance of counsel, the judge did not err by refusing to afford defendant an evidentiary hearing. *State v. Preciose*, 129 N.J. 451, 462 (1992).

(Dkt. No. 9-43 at p. 6-11.)

As the United States Court of Appeals for the Third Circuit has noted, "[a] habeas petitioner challenging the voluntary nature of his or her guilty plea faces a heavy burden." *See Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994). A guilty plea may be constitutionally infirm where a defendant failed to understand the constitutional rights he was waiving by pleading guilty or had an incomplete understanding of the charges against him. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).

In this case, any purported deficiency of counsel before the April 15, 2003 plea hearing was corrected subsequent to the plea. Indeed, after the plea hearing, but before sentencing, petitioner signed an addendum whereby he affirmed that he: (1) understood what the defense of insanity is and understood that he had the right to assert this defense; (2) understood that based on the evidence provided to him since he entered his guilty plea, he could attempt to assert an insanity defense; (3) gave up his right to assert the insanity defense; and (4) wished the court to sentence him for the crimes which he pled guilty. (*See* Dkt. No. 9-7.) Furthermore, the state

court determined that counsel engaged in meaningful discussions with petitioner about the insanity defense.  Petitioner failed to show by clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), that this factual finding was in error.  *See Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002) (noting that federal courts "must presume that factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary").  Plea counsel submitted a certification affirmatively stating that he met with petitioner on January 10, March 19, April 9, April 14, April 24, July 2, August 12 and October 22, 2003.  Counsel also certified that he discussed with petitioner the possibilities, strategies and potential outcomes connected with raising a mental incapacity defense.  (*See* Dkt. No. 9-9 at p. 2-3.)  Furthermore, Dr. Parra opined that petitioner was "capable of making and intelligent and voluntary decision to waive an insanity defense by trial," and that "[h]is decision is based on the knowledge and consequences of his actions."  (Dkt. No. 9-9 at p. 3.)  Additionally, while Dr. Paul issued his report after the plea addendum, his report was not exculpatory on the mental fitness question.  Instead, Dr. Paul opined that petitioner was competent to stand trial and that he was feigning mental illness to lessen his criminal responsibility.  (*See* Dkt. No. 9-10 at p. 6.)

The state court determination that petitioner's plea was knowing and voluntary was not an unreasonable application of clearly established federal law based on these circumstances.  Indeed, as explained above, petitioner was deemed competent to waive his insanity defense and evidence produced after the plea addendum was not exculpatory.  Therefore, Claim I does not merit federal habeas relief.

B. Claim II – Consecutive Sentence

In Claim II, petitioner contends that the trial court abused its discretion when it sentenced petitioner to consecutive sentences. Petitioner argues that the sentences should have been concurrent because the crimes were closely related and because of mitigating factors such as his mental illness. (*See* Dkt. No. 3 at p. 9.) The last reasoned decision on this claim was from the Appellate Division on petitioner's direct appeal which analyzed this claim as follows:

> Defendant argues that, although he entered his guilty plea on the basis of the State's agreement to recommend two consecutive thirty-year sentences of imprisonment, without parole, the trial court abused its discretion by failing to sentence him to concurrent terms. Defendant contends that the court erred in not considering his history of mental illness and childhood abuse as a mitigating factor. Defendant also asserts that the two crimes, while horrific, were so close in time and place as to be a single aberrant act, thereby justifying imposition of concurrent terms in accordance with *State v. Yarbough*, 100 N.J. 627, 643 (1985), *cert. denied*, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986). We reject these arguments.
>
> The trial court found the following three aggravating sentencing factors; N.J.S.A. 2C:44-1a(1) (the heinous, cruel or depraved manner and circumstances of the offenses); N.J.S.A. 2C:44-1a(2) (the extreme vulnerability of the victims because of their young ages); and N.J.S.A. 2C:44-1a(9) (the need to deter defendant and others from violating the law). The court only found one mitigating sentencing factor under N.J.S.A. 2C:44-1b(7) [FN3] (a lack of "any real serious" prior criminal record). Emphasizing that there can be no free crimes, the court determined that defendant's crimes were separate and distinct acts of violence which, although occurring close in time, warranted imposition of consecutive thirty-year sentences. The court concluded that:
>
>> [B]ecause of all of the factors that I went through, and because of all of what occurred that night, and everything that occurred to those two innocent children, and because to do otherwise would give you and anyone else a license to say if I take one life now, I might as well take another if they're there . . . . [t]he sentence will be consecutive, and it will be 60 years . . . without parole.

[FN 3]  We note that the two judgments of conviction mistakenly reference the mitigating factor found as N.J.S.A. 2C:44-1b(6).  We direct the trial court to amend the judgments of conviction accordingly.

When reviewing a sentence, we determine whether the trial court exercised its discretion "based upon findings of fact that are grounded in competent, reasonably credible evidence," and whether the court applied the correct legal principles to those findings.  *State v. Roth*, 95 N.J. 334, 363 (1984).  We will only reverse a sentence where the facts and law show "such a clear error of judgment that it shocks the judicial conscience."  *Id.* at 364.  "The test is not whether a reviewing court would have reached a different conclusion on what an appropriate sentence should be; it is whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review.  *State v. Tarver*, 272 N.J. Super. 414, 435 (App. Div. 1994).

In *Yarbough*, *supra*, 100 N.J. at 643-44, the Court established guidelines for reviewing the imposition of concurrent versus consecutive sentences.  In terms of the crimes themselves, reviewing courts should consider the independence of the crimes and their objectives, whether the crimes are distinct, involving separate acts of violence or occurring at different times or different places, and whether there are multiple victims or convictions.  *Id.* at 644; *see also State v. Baylass*, 114 N.J. 169, 180 (1989).  In general, "there can be no free crimes in a system for which the punishment shall fit the crime"; the sentencing decision should include a detailed statement of the reasons for imposing a particular sentence; and "successive terms for the same offense should not ordinarily be equal to the punishment for the first offense."  *Yarbough*, *supra*, 100 N.J. at 643-44.  The Court also recognized that some cases are "so extreme and so extraordinary that deviation from the guidelines may be called for."  *Id.* at 647.

We perceive no merit in defendant's first contention that the court erred by not finding that his mental illness arising from childhood abuse and trauma constituted a mitigating factor.  N.J.S.A. 2C:44-1b(4) requires the court to consider mental illness as a mitigating sentencing factor if "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense."  Under *State v. Dalziel*, 182 N.J. 494 (2005), "[a]ggravating and mitigating factors must be supported by credible evidence . . . [and] where they are so supported, they must be part of the deliberative process."  *Id.* at 505.  However, where

16

"the evidence could support, but does not compel, the conclusion that any of the cited mitigating factors apply." *State v. Sherman*, 367 N.J. Super. 324, 360, *certify. denied*, 180 N.J. 356 (2004), "failure to find a particular mitigating factor [is] not an abuse of discretion." *Dalziel*, *supra*, 182 N.J. at 504.

Defendant cites *State v. Nataluk*, 316 N.J. Super. 336, 340 (App. Div. 1998), a case in which the defendant presented an insanity defense at trial, but which defense was rejected by the jury. On appeal, the defendant claimed that the trial court erred in not submitting a diminished capacity defense to the jury, and we agreed. *Ibid*. Similarly, in *State v. Serrano*, 213 N.J. Super. 419, 423 (App. Div. 1986), *certif. denied*, 107 N.J. 102 (1987), we found error in the trial court's not issuing a diminished capacity charge to the jury when the defendant presented considerable psychiatric evidence sufficient to indicate he may have been unaware that his actions were wrong. *Id.* at 422.

Unlike the defendants in *Nataluk* and *Serrano*, defendant neither presented an insanity nor a diminished capacity defense to a jury. Rather, he waived those defenses. Furthermore, the existence of defendant's claimed mental illness is not entirely supported by the record; therefore, the court was not required to consider it. *Dalziel*, *supra*, 182 N.J. at 505. Parra's report supported mental illness, but it was contradicted by Paul's court-ordered independent competency evaluation, as well as defendant's waiver of his insanity defense.

Defendant argues next that the trial court erred by imposing consecutive, rather than concurrent sentences, citing *State v. Louis*, 117 N.J. 250 (1989), contending that his crimes were the result of a single act of aberrant behavior and stemmed from the same objectives, and that, therefore, his sentences should run concurrently. We disagree.

In *Louis*, *supra*, 117 N.J. at 252, the defendant broke into a woman's apartment, raped her, stole her money, stabbed her and her child, and set the apartment on fire. The trial court sentenced the defendant on seven counts, including two counts of attempted murder and two of kidnapping, to an aggregate sentence of 130 years with sixty-five years of parole ineligibility. *Id.* at 254. Following an appeal and remand, we restructured the sentence in accordance with *Yarbough*, finding that the crimes and objectives were not wholly independent and were likely the result of a single period of aberrant behavior. *Id.* at 255. We sentenced the defendant to a sixty-year term of imprisonment with thirty years of

parole ineligibility.  *Ibid*.  The Court affirmed, finding that although some cases may be "'so extreme and so extraordinary that deviation from the guidelines may be called for[,]' . . . [t]hat does not mean that all consecutive sentencing criteria are to be disregarded in favor of fashioning the longest sentence possible." *Id.* at 258.  (quoting *Yarbough*, *supra*, 100 N.J. at 647).

We find *Louis* distinguishable because *Louis* involved convictions of varied crimes, including kidnapping, attempted murder, robbery and arson.  *Id.* at 253.  In *Louis*, the trial court linked the sentences on all the varied crimes into one extremely long, consecutive sentence, with each crime graded at the maximum range, which suggested that the court "double-count[ed] aggravating factors by applying the horror of the assaultive crimes to each individual crime."  *Id.* at 253-55.

Here, defendant was sentenced in accordance with his plea agreement.  The court rendered a well-reasoned opinion, providing a thorough explanation of its decision to impose consecutive sentences following the *Yarbough* guidelines, while emphasizing the severity of defendant's acts.  *Yarbough*, *supra*, 100 N.J. at 647. The court found that defendant's actions in killing the children involved separate objectives and acts of violence, and that the only *Yarbough* factor mitigating in favor of concurrent terms was proximity in time.  Moreover, it found three aggravating factors (the heinousness of the offense, the vulnerability of the victims, and the need to deter) and only one mitigating factor (no prior record).

Rather, defendant's case is similar to *State v. List*, 270 N.J. Super. 169, *certif. denied*, 134 N.J. 486 (1993), in which the defendant killed his wife, his mother, and his three children.  *Id.* at 172.  The defendant shot his wife and his mother in the morning on different floors of their home, and shot each of his three children as they returned home from school in the afternoon.  *Id.* at 172-73.  In imposing consecutive sentences for each murder, the court found that, although the killings were related in the defendant's mind, they were "predominately independent," having been committed at different times in separate circumstances, and were also so extreme as to justify an exception from the *Yarbough* guidelines.  *Id.* at 176.

The Court also employed the "extreme case" exception in *State v. Carey*, 168 N.J. 413, 420 (2001), in which the defendant smashed into an oncoming car while driving drunk, killing two people and severely injuring two others.  The defendant was convicted of two

counts of vehicular homicide and of two counts of assault by auto, and was sentenced to consecutive terms on the homicide charges. *Id.* at 420-21. The Court determined that the *Yarbough* factors weighed three-to-two in favor of concurrent sentences, but stated that aggravating factors can play a large part in the final sentencing outcome. *Id.* at 424.

The Court looked to the "extreme cases" exception, determining that certain cases warrant consecutive sentences even where the majority of *Yarbough* factors indicate otherwise. *Id.* at 427-28. It stated that "[c]rimes involving multiple deaths . . . represent especially suitable circumstances for the imposition of consecutive sentences," particularly in cases where "a perpetrator intentionally targets multiple victims." *Id.* at 428-29. The Court concluded that "the multiple-victims [*Yarbough*] factor is entitled to great weight and should ordinarily result in the imposition of at least two consecutive terms when multiple deaths . . . have been inflicted upon multiple victims." *Id.* at 429-30. *See also State v. Molina*, 168 N.J. 436, 442 (2004) (reemphasizing that consecutive sentences can be imposed based on the multiple-victim *Yarbough* factor alone). The same principle applies here. Accordingly, we find no error in the imposition of consecutive sentences, defendant having brutally murdered his two children in a heinous manner.

(Dkt. No. 9-23 at p. 15-23.)

To obtain federal habeas relief, petitioner must show that the Constitution or laws or treaties of the United States were violated. *See* 28 U.S.C. § 2254(a). In this case, petitioner does not argue that his sentence violated the Constitution. Instead, petitioner argues that the state court abused its discretion in its sentence. In New Jersey, "a trial court has discretion to impose either consecutive or concurrent sentences for two or more crimes." *See State v. Pendleton*, Crim. Indictment No. 07-01-0043, 2013 WL 764682, at *6 (N.J. App. Div. Mar. 1, 2013) (citing *State v. Yarbough*, 100 N.J. 627, 643-44 (1985)). Whether the trial court abused its discretion in issuing consecutive sentences is purely a matter of state law not cognizable for federal habeas review as it does not raise a constitutional question. *Accord Gentile v. Warren*, No. 11-6125, 2013 WL 85266, at *15 (D.N.J. Jan. 7, 2013) (finding habeas claim that alleges that state court

failed to properly consider mitigating factors at sentencing is not cognizable as a federal habeas claim as it relates only to alleged violation of state law); *Coleman v. Folino*, No. 09-1225, 2010 WL 2683151, at *10 (W.D. Pa. June 1, 2010) (citing *Souch v. Schaivo*, 289 F.3d 616 (9th Cir. 2002); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *Herrera v. Artuz*, 171 F. Supp. 2d 146 (S.D.N.Y. 2001)), *report and recommendation adopted by*, 2010 WL 2653351 (W.D. Pa. July 2, 2010); *Curtis v. Moore*, No. 03-4981, 2006 WL 142190, at *13 (D.N.J. Jan. 19, 2006) ("[T]o the extent that the trial court imposed two consecutive sentences in violation of N.J.S.A. 2C:44-5a(2), this also is an issue of state law that is not subject to federal habeas review.").  Accordingly, this claim does not merit federal habeas relief.

C.  <u>Claim III – Ineffective Assistance of Counsel</u>

In Claim III, petitioner makes four separate arguments; specifically:  (1) trial counsel failed to advise defendant about the possibility of any defense based on mental deficiencies; (2) trial counsel failed to provide him with any discovery; (3) trial counsel failed to conduct any investigation; and (4) trial counsel pressured defendant into waiving any defense based upon insanity and diminished capacity during the plea by insisting he was guilty and would receive the death penalty.  Each argument is considered in turn.

i.  *Failing to Advise Petitioner about Mental Deficiencies Defenses*

Petitioner contends that counsel failed to advise defendant about the possibility of any defense based upon mental deficiencies.  This claim is basically asserting the same as Claim I. As noted in Part IV.A, *supra*, the Appellate Division determined that any purported deficiency by trial counsel was fixed between the plea hearing and sentencing.  Indeed, as previously noted, petitioner signed and executed an addendum to his plea which stated that that he: (1) understood the defense of insanity and understood that he had the right to assert this defense; (2) understood

that based on the evidence provided to him since he entered his guilty plea that he could attempt

to assert an insanity defense; (3) gave up his right to assert the insanity defense; and (4) wished

the court to sentence him for the crimes which he pled guilty.  (*See* Dkt. No. 9-7.)  Further, Dr.

Parra's report indicated that petitioner was "capable of making and intelligent and voluntary

decision to waive an insanity defense by trial," and that "[h]is decision is based on the

knowledge and consequences of his actions."  (Dkt. No. 9-9 at p. 3.).  The Appellate Division

determined that counsel engaged in a meaningful discussion with petitioner about the insanity

defense.  Petitioner failed to rebut this finding by clear and convincing evidence for the reasons

previously stated, *see supra* Part IV.A  Furthermore, Dr. Paul's report issued after the plea

addendum was not exculpatory.  Accordingly, this argument does not merit federal habeas relief

for the reasons previously discussed, *see supra* Part IV.A.

      ii.    *Failure to Provide Petitioner with Discovery*

Next, petitioner argues that plea counsel failed to provide him with discovery.  Petitioner

raised this claim in his post-conviction relief petition in the New Jersey Superior Court.

However, the Appellate Division determined that petitioner failed to raise this issue on appeal.

(*See* Dkt. No. 9-43 at p. 5 ("Judge Callahan also rejected as meritless defendant's remaining

claims of ineffective assistance of counsel, including defendant's claims that trial counsel failed

to provide him with pretrial discovery, failed to conduct an adequate investigation, pressured him

to plead guilty and failed to present mitigating factors at sentencing; however, because defendant

has not raised these issues on appeal, we need not discuss them further.").)  Accordingly, this

claim may be unexhausted.  *See Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000) (to properly

exhaust a claim, the claim "must have been fairly presented to *each* level of the state courts.")

(emphasis added).  Nevertheless, this Court need not determine whether this argument is fully

exhausted as "a district court may deny a claim on its merits despite non-exhaustion if it is perfectly clear that the applicant does not raise even a colorable federal claim."[2]  *See Lucero v. Martinez*, 526 F. App'x 161, 164 n.5 (3d Cir. 2013) (citing *Evans v. Court of Common Pleas, Delaware Cnty*, 959 F.2d 1227, 1231 (3d Cir. 1992)).

Petitioner states in his amended federal habeas petition that "counsel failed to provide defendant with any discovery."  (Dkt. No. 3 at p. 11.)  In denying this claim during the PCR proceedings, the Superior Court determined that petitioner's:

> claim that he did not receive discovery from counsel is unsupported by any evidence.  Petitioner fails to mention the discovery he did not receive, fails to note whether he went over the alleged discovery with counsel, and failed to indicate how the lack of copies of said discovery prejudiced him within the second prong of *Strickland*.

(Dkt. No. 9-34 at p. 8.)

During the PCR proceedings, petitioner claimed that he "was not made aware of these reports and medical opinions until after the plea.  In fact, some of them did not even exist. Effective counsel should have immediately turned over all reports in his possession to the defendant prior to the plea."  (Dkt. No. 9-31 at p. 30.)  As petitioner correctly notes, counsel did not have the reports and medical opinions prior to petitioner entering his plea.  It was only after petitioner pled that the medical opinions and reports became available.  However, even after Dr. Parra issued his report in July, 2003, that petitioner was experiencing a catathymic crisis during

---

[2] Furthermore, the State expressly waived any lack of exhaustion argument by stating that all of petitioner's claims within Claim III were raised to the three levels of the New Jersey state courts during petitioner's PCR proceedings. (*See* Dkt. 9-1 at p. 18.)  The fact that the State based this concession on potentially flawed analysis is of no consequence.  *See Sharrieff v. Cathel*, 574 F.3d 225, 229 (3d Cir. 2009) ("The fact that the State based its concession on a flawed legal conclusion is of no consequence; its concession clearly, explicitly, and unambiguously relinquished and abandoned its right to assert the nonexhaustion defense.  That is enough to expressly waive the exhaustion requirement under Section 2254(b)(3).").

the murders, petitioner still, after meeting with his counsel several times to discuss his case, executed the plea addendum in November, 2013.  That addendum affirmed that he:  (1) understood the defense of insanity and understood that he had the right to assert this defense; (2) understood that based on the evidence provided to him since he entered his guilty plea that he could attempt to assert an insanity defense; (3) gave up his right to assert the insanity defense; and (4) wished the court to sentence him for the crimes which he pled guilty.  (*See* Dkt. No. 9-7.) While little to no discovery was available prior to the plea, this oversight was corrected subsequent to the plea to allow petitioner to make an informed decision to waive the insanity defense, which he did as illustrated by the plea addendum.  While Dr. Paul's report was issued even after the plea addendum, it was not potentially exculpatory as Dr. Paul opined that petitioner was feigning mental illness.  Based on these circumstances, petitioner fails to show a colorable ineffective assistance of counsel claim due to a purported failure of counsel to disclose discovery.  He fails to show to a reasonable probability that he would not have pled guilty in light of his subsequently executed plea addendum executed after the Parra July, 2013 report and the lack of exculpatory discovery issued after the plea addendum was executed.

     iii.    *Counsel Failed to Conduct Any Investigation*

Petitioner next argues that counsel failed to conduct any investigation.  Similar to petitioner's previous claim, the Appellate Division determined that petitioner did not raise this issue on appeal.  Nevertheless, as explained above, this Court need not decide the exhaustion issue as the claim can still be denied on the merits provided that it is not "colorable."  *See Lucero* 526 F. App'x at 164 n.5.

The Appellate Division noted on direct appeal in discussing petitioner's other ineffective assistance of counsel claim that trial counsel may have been remiss in permitting petitioner to

plead guilty without having the benefit of the psychological reports.  Nevertheless, as noted above, any purported deficiency in counsel's actions was corrected after the plea.  Petitioner underwent psychological testing by Dr. Parra and Dr. Paul, who found that he had the requisite capacity to plead guilty.  Subsequently, after Dr. Parra issued in his initial report indicating that petitioner was experiencing a catathymic crisis during the murders, petitioner still executed the plea addendum affirming that he understood his right to assert an insanity defense and that he was waiving that defense.  Of course, this was only done after petitioner met with counsel  on numerous occasions.  Dr. Paul issued his report after the plea addendum, but as previously stated, the report was not exculpatory.  Based on these circumstances, petitioner has failed to show to a reasonable probability that he would not have pled guilty had counsel conducted further investigation.  Plaintiff's psychological well-being was analyzed after the plea.  Petitioner executed the plea addendum recognizing and waiving his right to assert such a defense after the July, 2013 Parra report and Dr. Paul's report was not exculpatory.  Thus, this claim does not merit federal habeas relief.

     iv.    *Pressuring Defendant Into Waiving any Insanity or Diminished Capacity Defense*

Petitioner also claims that trial counsel pressured him into waiving any defense based upon insanity and diminished capacity by insisting that he was guilty and would receive the death penalty in the alternative.  The Appellate Division determined that petitioner failed to raise this claim on appeal.  Nevertheless, this Court need not determine the exhaustion issue as to this claim as petitioner fails to raise a "colorable" claim that entitles him to federal habeas relief.

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant.  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  The voluntariness of a plea "can be determined only by

24

considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S.

742, 749 (1970). As noted by the United States Supreme Court:

> [T]he representations of the defendant, his lawyer, and the
> prosecutor at [the plea] hearing, as well as any findings by the
> judge accepting the plea, constitute a formidable barrier in any
> subsequent collateral proceedings. Solemn declarations in open
> court carry a strong presumption of verity. The subsequent
> presentation of conclusory allegations unsupported by specifics is
> subject to summary dismissal, as are contentions that in the face of
> the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Stewart*, 977 F.2d 81,

84 (3d Cir. 1992) ("The ritual of the [plea] colloquy is but a means toward determining whether

the plea was voluntary and knowing. A transcript showing full compliance with the customary

inquiries and admonitions furnishes, strong, although not necessarily conclusive, evidence that

the accused entered his plea without coercion and with an appreciation of its consequences.").

During the plea hearing, the following colloquy took place between the court and the

petitioner:

> THE COURT: Mr. Davis, you did have the opportunity to go over
> all of these questions and answers with your attorneys. [¶] Is that
> correct?
> DEFENDANT DAVIS: Yes.
> THE COURT: And did they explain all of the questions to you?
> DEFENDANT DAVIS: Yes.
> THE COURT: And you answered them?
> DEFENDANT DAVIS: Yes.
> THE COURT: And they were written down on this piece of
> paper?
> DEFENDANT DAVIS: Yes.
> THE COURT: You understand that by pleading guilty you are
> waiving your rights to trial, your right to have witnesses to be
> brought in your behalf and to confront any witnesses against you.
> [¶] You also understand that these two charges will be on your
> record and you also understand what the consequences of these
> pleas are. [¶] Is that correct?
> DEFENDANT DAVIS: Yes.

> THE COURT:  And that is that you will be serving two 30 year sentences consecutive to each other which means that you will not be eligible for parole for a period of 60 years.  [¶]  You understand that?
>
> DEFENDANT DAVIS:  Yes.
>
> THE COURT:  Understanding all of that, do you still wish to plead guilty?
>
> DEFENDANT DAVIS:  Yes.
>
> THE COURT: *Anybody force you or coerce you?*
>
> DEFENDANT DAVIS: *No.*
>
> THE COURT:  Anyone threaten you in any way?
>
> DEFENDANT DAVIS:  No.
>
> THE COURT:  Any promises made to you other than the plea bargain?
>
> DEFENDANT DAVIS:  No.
>
> THE COURT:  Are you satisfied with the services of your attorneys?
>
> DEFENDANT DAVIS:  Yes.

(Dkt. No. 9-53 at p. 13-15 (emphasis added).)

As illustrated above, petitioner expressly indicated during the plea colloquy that he was not coerced by anyone to plead guilty.  Petitioner comes forward with no evidence beyond his general statement that counsel coerced him to plead guilty.  This does not overcome the strong presumption of verity with respect to petitioner's prior statements as expressed during the plea hearing that he was not coerced.  *Accord Dove v. York Cnty., Pa.*, No. 12-0417, 2014 WL 670955, at *7-8 (M.D. Pa. Feb. 21, 2014) (finding plea transcript indicated absence of coercion where petitioner acknowledged no one had coerced his plea); *Stuart v. Phleps*, No. 09-250, 2011 WL 1302929, at *4 (D. Del. Apr. 1, 2011) ("[T]he statements Petitioner made during the plea process belie his present allegations that counsel coerced him to plead guilty[.]"); *Wilson v. Blackwell*, No. 07-4141, 2008 WL 4190953, at *3-4 (D.N.J. Sept. 9, 2008) (finding that plea was entered voluntarily and intelligently despite petitioner's claim that trial counsel threatened her with life in prison or even death where plea transcript indicated that petitioner stated that she was not coerced or induced into making the plea).  Thus, petitioner failed to make a showing that his

plea was coerced, and therefore, not voluntary.  Accordingly, petitioner is not entitled to federal habeas relief on this ineffective assistance of counsel claim.

   D.   Failure to Conduct an Evidentiary Hearing

In his final claim, petitioner argues that the PCR court erred by failing to conduct an evidentiary hearing on his ineffective assistance of counsel claims.  As previously explained, habeas relief is available for violations of the Constitution, laws or treaties of the United States.  *See* 28 U.S.C. § 2254(a).  Thus, claims raised based on state law error are not cognizable.  *See Estelle*, 502 U.S. at 67-68.  Additionally, "the federal role in viewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation."  *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998); *see also Lambert v. Blackwell*, 387 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings . . . are not a proper basis for habeas relief from the original conviction.  It is the original trial that is the 'main event' for habeas purposes."); *Semmens v. Glover*, No. 09-5985, 2011 WL 6825917, at *2 n.7 (D.N.J. Dec. 28, 2011) ("Errors in state post-conviction relief proceedings . . . are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.").  As this claim argues that the PCR court erred by not holding an evidentiary hearing as opposed to his plea proceedings, it fails to state a cognizable § 2254 claim.  Accordingly, this claim does not merit federal habeas relief.

## V.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

## VI.    CONCLUSION

For the foregoing reasons, the habeas petition is denied and a certificate of appealability shall not issue. An appropriate Order accompanies this Opinion.

DATED:  June 10, 2014                                s/ Jose L. Linares
                                                     JOSE L. LINARES,
                                                     United States District Judge